UNITED STATES, Appellee

v

FLAYIOUS W. KIRKSEY, Captain, U. S. Army, Appellant

6 USCMA 556, 20 CMR 272

No. 7111

Decided December 16, 1955

*Lieutenant Colonel Jackson K. Judy* argued the cause for Appellant, Accused.

*First Lieutenant Peter J. Hughes* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Captain M. Douglas Hodges,* and *First Lieutenant A. Kenneth Pye.*

## Opinion of the Court

PAUL W. BROSMAN, Judge:

We are once more called on to determine whether certain ostensible offenses reflected in the findings of a general court-martial constitute crimes known to military law. Charged with dishonorably failing to pay a debt and —in twelve specifications—with dishonorably failing to maintain sufficient funds in a banking account,[1] the accused officer was convicted of no more than "discreditably" failing to deal with both sorts of financial obligation. After receiving a sentence to dismissal from the service, which was affirmed—together with all findings—Captain Kirksey now comes before us on petition, contending that the offenses of which he was found guilty by the court-martial are not lesser crimes included within those alleged in the several specifications. Briefs and arguments concerning this issue, and three related ones, were submitted to us for consideration—and, after a careful study of the positions taken by both the appellant and the Government, we are convinced that the conviction cannot stand.

## II

Since the circumstances surrounding the commission of the alleged offenses have no bearing on our disposition of the case, we shall set forth a no more complete account of the facts than the following. Captain Kirksey was shown to have executed the twelve checks described in specifications 4 through 15, which instruments were dishonored on presentment. And, on August 5, 1954, he had not discharged a debt contracted by him during the previous May.

---

[1] Although all of the specifications under consideration here were laid under Article 133, Uniform Code of Military Justice, 50 USC § 727, it may be observed that the worthless check charges might, and probably should, have been alleged as violations of Article 134. Manual for Courts-Martial, United States, 1951, Appendix 6c, page 489.

After this information had been received by the court-martial during the course of trial, the law officer proceeded to instruct its members regarding the elements of the crime of dishonorably failing to pay a just debt. Thereafter, and by way of explanation, he included the following language in his charge:

"The term 'dishonorably' as used in the specification imports that the failure of an officer to pay a just debt was characterized by fraud, deceit, dishonesty, evasion, or false representations or promises. However, an officer's failure to pay a just debt as a result only of such negligence, indifference, or irresponsibility as brings discredit upon the armed forces, though not dishonorable, is nevertheless a less serious offense, in violation of Article 134, which may be found by excepting from the specification the word 'dishonorably' and substituting therefor the word 'discreditably.' A mere failure to pay a just debt, more through misfortune than through fault, is not a punishable offense."

He then spelled out the elements of the offense of dishonorably failing to maintain sufficient funds; once more defined the term "dishonorable"; and in similar vein observed that in each instance a lesser crime based on a merely negligent omission was included within the greater worthless check offenses alleged. After receiving these directions, the court-martial retired and returned shortly with findings of guilty of the *soi-disant* lesser offenses described by the law officer. As subsequent discussion will demonstrate, however, we are certain that the action of the fact finders did not result in a valid conviction.

### III

A contemporary opinion of this Court furnishes a complete answer to the question of whether a negligent failure to maintain bank funds to meet outstanding checks constitutes "conduct of a nature to bring discredit upon the armed forces," in violation of the Uniform Code of Military Justice. In United States v Downard, 6 USCMA 538, 20 CMR 254, we held—and clearly—that no such offense is cognizable under Article 134. Encompassed within the folds of that opinion is to be found our recognition of the fact that no edition of the Manual for Courts-Martial has ever made reference to the existence of such a crime—either explicitly, or by including it among other model specifications of similar description, or enumerating it in the Table of Maximum Punishments. In addition, we analyzed at length the conflicting opinions of service boards of review—with the result that we were able to discern no clear acceptance within the Armed Forces of the view that a failure to maintain a sufficient bank balance to meet outstanding checks through a mere lack of due care constitutes a violation of the so-called "General article." These conclusions we found to be bolstered in large measure by the pronouncements of civilian authorities to the effect that, in the absence of express statutory language, criminal liability should not be bottomed on simple negligence.

The rationale of the Downard decision is applicable with equal vigor to the case before us now. The present appellant stands convicted under twelve counts of "discreditably" failing to maintain funds—findings identical with these returned against Downard. Furthermore, by explicity excepting the term "dishonorably" from the findings, the members of the court-martial necessarily eliminated the gravamen of the offense contemplated by the draftsman of the specifications—this for the reason that the word itself has been construed by this Court to connote bad faith or gross indifference, a state of mind in the absence of which no crime of this nature may be recognized. United States v Downard, supra. Therefore, we hold unhesitatingly that the findings of the present court-martial under the worthless check specifications reduce to nullities and, as such, are wholly ineffective to form a basis for punitive action.

### IV

We reach now the question posed by

the court's determination that the accused "discreditably" failed ▮ to discharge a debt. It is difficult, of course, for one unfamiliar with the principles of military criminal law to accept the notion that any sort of nonpayment of a pecuniary obligation may subject a member of the Armed Services to penal sanctions. Traditionally, the American concept of justice has excluded the abhorrent practice of imprisonment for debt—with the result that the constitutions of the several states almost invariably contain clauses specifically forbidding action of this character. Sound reasons familiar to us all, and too numerous to mention here, lend full support to the constitutional protection which enables even the most imprudent debtor to retain his liberty—and we have no slightest wish to derogate from the importance of such a safeguard. Indeed, we heartily agree that, within the civilian community, the direct use of criminal sanctions to enforce the collection of debts must be condemned.

When we consider the problem created by a failure to meet financial obligations as it is found in the military scene, however, additional and perhaps overriding factors must be taken into account. Since the military establishment is composed in large part of transient—often unselected—personnel removed from the customary restraints of civilian society, it is readily apparent that resolute measures are required to insure the prompt liquidation of fiscal obligations. Civil suits are always difficult in such a setting, and are seldom effective against service personnel, who may be found within the jurisdiction of local courts at one time and far removed therefrom at another shortly thereafter. Indeed, if normal civil processes constituted the sole remedies available to creditors of military people, it is' conceivable, at least, that an unscrupulous soldier, sailor or airman calculatedly might amass substantial liabilities in advance of impending transfer, and—on completion of the movement—find himself immune from civil action for all practical purposes. Moreover, members of the military community—easily identi-

fied through the wearing of the uniform —are inevitably grouped in the public mind as a class—with the result that a failure by one to discharge monetary responsibilities tends to brand all not only as criminal persons, but as poor credit risks as well, in the eyes of the civilian population. Too, the ancient ethical traditions of the profession of arms cannot safely be left out of account in this connection. Historically, of course, these moral customs have possessed a particularly binding force in the case of commissioned officers— but they have not at all been rejected in that of enlisted personnel. And they have always dictated a high standard of promissory responsibility.

For these reasons, the Armed Services have sought for years to impose on their members a standard of financial accountability somewhat higher than that demanded of the civilian. It is therefore well established in military law that a failure to discharge obligations *when characterized by a certain culpable type of motivation* may result in court-martial charges against the debtor. If the offender be an officer, he has been dealt with traditionally under that clause of the military code of the period which proscribed conduct unbecoming an officer and a gentleman. Where an enlisted man is involved, the offense customarily has been laid under the "General article"—that is, that section of the legislation which, in broad language, provides that all misconduct of a nature to bring disrepute on the Armed Services shall be cognizable by court-martial. However, it ▮ is our view that a mere *negligent* omission—in either case—is not of itself a wrongdoing of sufficient moment to justify punitive action based on the nonpayment of a debt.

Historically, a military officer who neglected to meet his pecuniary obligations was not liable criminally unless the failure involved was characterized by deceit, evasion, or false promises, or the like—in short, conduct tending to bring *dishonor* to the service, through dishonoring the actor. See Winthrop, Military Law and Precedents, 2d ed, 1920 Reprint, pages 710–715; Dig Op

JAG, 1866, pages 20, 26. Moreover, it seems clear that, under the Articles of War, a merely negligent failure to repay borrowed money—*without more*—did not subject an officer to court-martial action. Winthrop, supra.

After the substantial revision of the Articles in 1920, the requirement that only a *dishonorable* failure to discharge a debt is punishable by courts-martial remained intact. United States v Little, 1 CMR (AF) 182; United States v Loman, 81 BR 195. See also Navy CMO No. 11-1928, page 15. Moreover, no distinction seems to have been recognized in the military establishment between that misconduct which fell within the proscription of Article of War 95 (conduct unbecoming an officer and a gentleman) and the "dishonorable" failure, which resulted in a violation of Article 96 (conduct of a nature to bring discredit on the Armed Forces). United States v Loman, supra; Naval Courts and Boards, 1937, §§ 98, 99, pages 83, 89. In fact, the service authorities, with but few minor exceptions, have refused to recognize the view that failing to pay a debt because of a want of due care amounted to a court-martial offense under military law. And—it seems to us—the isolated boards of review which reached a contrary result have simply ignored the overwhelming weight of military precedent, and offered no compelling reasons in support of their conclusions. See United States v Scoratow, 12 BR–JC 37; United States v Smith, 45 BR 329. Because we are without doubt that our decision here is the correct one, we choose expressly to disregard those opinions.

After the enactment of the Uniform Code of Military Justice, the attitude of service appellate agencies toward the offense under scrutiny remained unchanged. Unless the failure to liquidate an obligation was characterized by some act of willful evasion, bad faith, or false promise, the conduct is not regarded as dishonorable—and therefore not an offense under the Uniform Code. United States v Walden [ACM 8194], 15 CMR 654; United States v Arnovits [CM 352775], 8 CMR 313. Although one Army board of review has concluded otherwise,[2] we are sure that the great weight of the better reasoned military authority is to the effect that no crime is committed by one who fails to discharge a financial obligation by reason of negligence.

And the conclusion we reach is supported substantially by the implementing provisions of the several editions of the Manual for Courts-Martial. Each of the three most recent issues of this source offer model specifications tailored to outline the offense of failing *dishonorably* to pay a debt. Manual for Courts-Martial, U. S. Army, 1928, Appendix 4, pages 253, 255; Manual for Courts-Martial, U. S. Army, 1949, Appendix 4, pages 326, 329; Manual for Courts-Martial, United States, 1951, Appendix 6, pages 488, 490. No mention whatever is made of a crime described as "discreditably" or "negligently" failing to settle indebtedness. Moreover, in each of these volumes the Table of Maximum Punishments includes only *one* debt offense under Article 134—which carries, upon conviction, a maximum sentence to dishonorable discharge, total forfeitures, and confinement at hard labor for six months. Manual, 1928, supra, page 100; Manual, 1949, supra, page 139; Manual, 1951, supra, page 225. It is at once apparent that at no place among the provisions of any one of the several modern Manuals do we find the slightest suggestion that nonpayment of debts because of carelessness is to be recognized as a crime.

In spite of this imposing array of precedents and other authorities directed against their position, appellate Government counsel insist that certain language found in the current Manual for Courts-Martial lends solid support to the view that a neglect to discharge a debt is punishable as a violation of Article 134 of the Code. Indeed, the paragraph they cite does observe that, if an officer or an enlisted person, by his conduct or attitude toward private indebtedness or to his creditor, reflects discredit on the service, he may be

---

[2] See United States v Loney, 8 CMR 532.

brought to his trial. Manual, 1951, supra, paragraph 213*b*. And so Government counsel have concluded that a member of one of the military services who falls below a standard of reasonableness of care—with the result that the reputation of the Armed Forces is affected—has necessarily violated the mentioned Article.

We are afraid that we cannot accept this position. Certainly, as we read it, the Manual section on which they rely does *not* provide that a mere omission to adhere to that standard of attention attributable to a reasonable man constitutes misconduct of that sort and degree which brings into play the provisions of the Code relating to a failure to pay debts. Instead, it refers specifically to the "conduct" or "attitude" of a military person toward either his creditor or his obligation—by which we are sure is meant an affirmatively culpable conduct or attitude—and does not appear to us to suggest that, without more, an action which is service-discrediting equates to one which is criminal. In other words, we are unwilling to interpret the cited language apart from the context furnished by prior military legal authorities—and need only say that a clearer mandate than is to be found in paragraph 231*b* is required to cause this Court to accept the proposition urged by the Government in this case.

We are, of course, perfectly willing to concede that the failure of a member of the Armed Forces to pay his ·just debts will, in *every* instance, reflect *some* measure of discredit on the service concerned. Indeed, this phenomenon has not gone unnoticed by the services themselves. See United States v Young [ACM 7391], 12 CMR 939; United States v Walden, supra. But we cannot hold—in the absence of clear Code authorization or long established custom—that a *negligent* omission in this respect rises to the type of *dishonorable* conduct, which is the gravamen of the offense in question. The term "dishonorable" itself connotes bad faith or gross indifference—a state of mind not fairly attributable to one who is no more than careless. See United States v Downard, supra. Therefore, since boards of review have consistently required proof of some variety of fraudulent or deceitful purpose to support a conviction of failure to pay debts, we are sure that the Manual language cited by the Government is entirely consistent with our holding that only a *dishonorable* neglect constitutes that measure of misconduct which reflects discredit on the military establishment for present purposes.

As was observed in the opening paragraph of this section of the opinion, the imposition of punishment for debt is alien to the civilian's concept of criminal law—and justly so. In addition, we have suggested that only because of the necessarily unique composition of the military community are we willing to recognize the service custom by which penal sanctions are invoked against uniformed debtors— and then only provided that the failure to pay is accompanied by a course of conduct best described by the Armed Forces themselves as "dishonorable." Beyond that we will not, and, in good conscience, cannot go. Accordingly, we must hold that the instant findings of guilty of neglect to pay debts—based as they are on a determination that the accused did no more than fail to exercise reasonable care—does not state an offense cognizable under military law.

V

It follows from what has been said that the case against the accused must fall. This disposition of the case obviates discussion of the remaining assignments of error. The decision of the board of review is reversed and the charges are dismissed.

Chief Judge QUINN and Judge LATIMER concur.