UNITED STATES, Appellee

v

SAMUEL M. SCHNEIDERMAN, Seaman Apprentice, U. S. Navy, Appellant

12 USCMA 494, 31 CMR 80

No. 15,124

November 3, 1961

*Captain John P. Gibbons*, USN, argued the cause for Appellant, Accused. *Lieutenant (jg) Conrad Alexander Buhler*, USNR, argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

Tried by special court-martial, the accused pleaded guilty to five specifications of dishonorable failure to pay debts, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, confinement at hard labor for six months, and reduction to the grade of seaman recruit. The supervisory authority ordered a rehearing on the sentence in view of a "statement in aggravation" which trial counsel made during the post-findings

494

proceedings. At this rehearing, accused was sentenced to bad-conduct discharge, confinement at hard labor for three months, and reduction to the grade of seaman recruit. Intermediate appellate authorities affirmed, the board of review acting over the dissent of Member Tyson. We granted accused's petition for review on the issue whether the pleas of guilty were improvidently made.

The claim of improvidence arises from the substantially similar unsworn statements made by the accused in mitigation and extenuation at both the original trial and the rehearing on sentence. In the interest of brevity, we reproduce only that made at the latter proceedings.

"ACC: Sir, when I first got out of boot camp, I went to Norfolk, Virginia. I saw all the signs with credit to sailors and I thought it was a pretty good way to buy. I went out and bought myself some civilian clothes and before I knew it I was pretty deep in the hole. I tried to pay these off but I couldn't do it. I was keeping up my seabag. I decided to go over the hill and try to get a civilian job and get a little bit of money to give these people in the hopes that they could wait until I got a little further ahead. I was sent to the brig on this offense. I lost part payment and therefore I was in the hole when I come out of the brig. I was transferred aboard the USS NOBLE and letters of indebtedness came to the ship. They talked to me about them and I still couldn't find any way to pay them off. I was having troubles at home and I had to borrow money to take care of them. After awhile I went over the hill again with the hopes of getting some money saved. I was still unable to do this. My ship left San Diego in June and at that time I had written letters to these people and told them that I was going overseas and as soon as I got squared away on the ship I would send them something. I talked to the Legal Officer on the ship, the Executive Officer and my Captain. First the Executive Officer gave me a direct order to pay off all my military bills, money I had borrowed from men on the ship and get my seabag up to date. Meanwhile I was talking to the Legal Officer and the Captain and I was led to believe that I was to be transferred on 30 December to the Naval Receiving Station awaiting General Discharge with the intent that I would get a civilian job and pay my bills and then come back into the service and get an Honorable Discharge. The last thing I know I was given a court-martial for not paying these debts. I have letters from these people that I have written and told them about the discharge and that I would pay them $1.00 a month until I get a civilian job and then I would pay them $5.00 every other week until I get the bills out of the way. I have letters accepting that."

As noted by Member Tyson in his well-reasoned dissenting opinion, this Court has consistently held that a failure to pay one's debts must be *dishonorable* in order to constitute a violation of Code, supra, Article 134, *i. e.*, the failure must be characterized by fraud, deceit, false promises, or the like. United States v Atkinson, 10 USCMA 60, 27 CMR 134; United States v Kirksey, 6 USCMA 556, 20 CMR 272. And in United States v Cummins, 9 USCMA 669, 26 CMR 449, a majority of the Court stated at page 673:

"A dishonorable failure to pay one's just debt is made punishable under the Uniform Code because such conduct brings discredit upon the armed services. United States v Kirksey, 6 USCMA 556, 20 CMR 272. The public nature of the offense, however, has its source in a private relationship. If the private relationship is entirely satisfactory to the parties, there is no ill effect upon the civilian or military community. *In other words, if the creditor is satisfied with the conduct of his debtor, there is no basis for concluding that the conduct of the debtor discredits*

**495**

*the military services.*" [Emphasis supplied.]

Turning to the accused's statement in mitigation and extenuation, we find assertions that he overextended himself because of the easy credit terms made available to members of the naval service; that he tried to keep up his payments; that he was unable to do so; that he was required by a military order to pay off debts to other personnel; and, finally, that he had written his creditors and made satisfactory arrangements with them to liquidate his indebtedness.

The entire tenor of the declaration is inconsistent with any idea that accused's failure to pay his ▮ creditors was fraudulent, deceitful, or evasive. Not only does it clearly depict that his nonfeasance was predicated upon an inability to pay, but it concludes with the statement that satisfactory arrangements had been made with his creditors. Both these factors are at odds with the allegation of dishonorable conduct to which he pleaded guilty. United States v Cummins, supra; United States v Atkinson, supra. Accordingly, it was the duty of the president of the court-martial to inquire into the providence of accused's pleas and, if the statement was not withdrawn, to set them aside. Code, supra, Article 45, 10 USC § 845; United States v Epperson, 10 USCMA 582, 28 CMR 148; Manual for Courts-Martial, United States, 1951, paragraph 70b. His failure to do so requires reversal.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. The charges are ordered dismissed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

The arrangements the accused purportedly made with his creditors for repayment do not support the present claim of improvidence in entering the plea of guilty. According to accused's own statement, those arrangements could very well have been made *after* the accused had been served with charges. See United States v Clay, 11 USCMA 422, 29 CMR 238. Repentance after the commission of the offense, does not absolve the accused from liability for his wrong. See United States v Swanson, 9 USCMA 711, 26 CMR 491. It is also significant that the implication that the accused's purchases after his return from unauthorized absence were for necessary clothing and for "keeping up . . . [his] seabag" is sharply rebutted by the facts set out in two specifications of the charge. One specification alleges the accused spent $57.00 for a ring. The other specification shows that he purchased other articles for $96.86. These articles were not described, but judging from the name of the shop in which they were bought, it would appear they were not items of clothing.

Several other circumstances strongly support the plea. First, the accused suggests he got "pretty deep in the hole" while stationed in Norfolk. But two of the charges against him are for purchases made in San Diego, months after he realized he was very deeply in debt; and neither of these were, as pointed out above, for necessaries. Incurring obligations for what are apparently luxuries, when already substantially in debt, supports, in my opinion, an inference of dishonor, especially in view of the accused's admission that "letters of indebtedness" regarding his Norfolk purchases had "[come] to the ship," and he was informed of them before he made the purchases. The accused has presented nothing on this appeal to dispel the inference. Secondly, in referring to his unsuccessful effort during one of his unauthorized absences to obtain gainful civilian employment in order to give his creditors at least "a little bit of money," the accused implies that he had a genuine desire to meet his financial obligations. However, the continuation of his reckless buying habits in San Diego and his apparent frequent and unrepaid loans from shipmates constitute strong evidence of de-

liberate disregard of the debts he incurred while in Norfolk.

Reduced to its essentials, the accused's statement shows there were some circumstances which he might have used to contest the Government's evidence of guilt. However, the existence of incidental evidence of exculpation does not vitiate the accused's plea of guilty. As we observed in United States v Hinton, "we cannot disregard the probability that the accused and his counsel weighed the evidence and determined that it was inadequate for an effective legal defense or to negate the existence of a specific intent. As a result, they could well have decided to disregard the evidence in favor of the possible advantage of a guilty plea." 8 USCMA 39, 41, 23 CMR 263; accord United States v Wilson, 9 USCMA 60, 25 CMR 322. There is nothing in the accused's statement to justify setting aside his plea of guilty. I would, therefore, affirm the decision of the board of review.