UNITED STATES, Appellee

v.

Angela D. HILTON, Airman Basic
U.S. Air Force, Appellant

No. 68,513.
CMR No. 29096.

U.S. Court of Military Appeals.

Argued Nov. 2, 1993.
Decided March 4, 1994.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Terry J. Woodhouse* (on brief); *Lieutenant Colonel Frank J. Spinner* and *Lieutenant Colonel Jay L. Cohen.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon, Major Kingston E. Smith, USAFR, Major Paul H. Blackwell, Jr.* (on brief); *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

On December 4, 1990, appellant was tried before a military judge sitting alone at Malmstrom Air Force Base, Montana. In accordance with her pleas, she was found guilty of larceny (2 specifications); wrongfully drawing and uttering a bad check; dishonorably failing to maintain sufficient funds; and dishonorably failing to pay a just debt (3 specifications—one being found as a lesser-included offense to a bad-check offense), in violation of Articles 121, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 923a, and 934, respectively. She was

sentenced to a bad-conduct discharge as well as confinement and forfeiture of $482 pay per, month for 14 months. On January 23, 1991, the convening authority approved the sentence except for confinement exceeding 12 months. On July 22, 1992, the Court of Military Review set aside the findings of guilty as to one offense [1] and reassessed her sentence, affirming a bad-conduct discharge, 12 months' confinement, and forfeiture of $300 pay per month for 14 months.

This Court granted review of the following issue on February 12, 1993:

WHETHER THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT'S PLEAS OF GUILTY TO SPECIFICATIONS 2 AND 3 OF CHARGE III (DISHONORABLE FAILURE TO PAY JUST DEBTS) WHERE THE EVIDENCE AT TRIAL ONLY DEMONSTRATED APPELLANT SIMPLY DID NOT HAVE THE MONEY TO PAY THE DEBT AND THE AMOUNT OF THE DEBT, RENDERING THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN FINDINGS OF GUILT.

We hold that the military judge did not err in accepting appellant's guilty pleas to the above specifications. *See generally United States v. Prater*, 32 MJ 433 (CMA 1991).

Appellant pleaded guilty to two specifications of dishonorably failing to pay a just debt, in violation of Article 134. Those specifications state:

SPECIFICATION 2: In that [appellant], being indebted to Bonnie or Gary Beuning in the sum of $50.00 for value received, which amount became due and payable on 1 September 1990, did at or near Great Falls, Montana, from 1 September 1990 to 19 October 1990, dishonorably fail to pay said debt.

SPECIFICATION 3: In that [appellant], being indebted to Bonnie or Gary Beuning in the sum of $50.00 for value received, which amount became due and payable on 1 October 1990, did, at or near Great Falls, Montana, from 1 October 1990 to 19 October 1990, dishonorably fail to pay said debt.

The following stipulation of fact was entered into by appellant concerning these allegations:

[I]n early April 1990, the accused borrowed $600.00 from Bonnie and Gary Beuning. Ms. Bonnie Beuning knew the accused through a Ms Jolene Britton—a mutual acquaintance. The loan was purportedly due to a temporary monetary shortfall the accused was suffering at the time. After paying back $50.00 of the loan in April 1990, the accused signed a promissory note to memorialize the earlier transaction. The loan was to be paid in $50.00 installments on the first of each month, beginning on 1 August 1990, with an interest rate of 9 percent per annum.

On 1 September 1990 and 1 October 1990, the accused, without excuse or justification and without the agreement of Bonnie or Gary Beuning, failed to pay $50.00 on each of these dates as the aforementioned promissory note demanded. The accused's failure to pay was dishonorable.

The record of trial also addressed these specifications:

MJ The elements to Specification 3, Charge III, are as follows:
(1) that you were indebted to Bonnie or Gary Beuning in the sum of $50.00;
(2) that this debt became due and payable on 1 October 1990;
(3) that at or near Great Falls, Montana, from 1 October 1990 to 19 October 1990, while the debt was still due and payable, *you dishonorably failed to pay this debt;*

---

1. Appellant's conviction under Article 134, Uniform Code of Military Justice, 10 USC § 934, for failing to pay a just debt based on her bounced August check was set aside because such an offense was found not to be a lesser-included offense to the originally charged offense of drawing and uttering a false check under Article 123a, UCMJ, 10 USC § 923a. This decision was not certified (Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989)), *see United States v. Wilkins*, 29 MJ 421 (CMA 1990). Nevertheless, her admission to this offense is part of the guilty-plea inquiry and is one of the circumstances preceding her September and October non-payments of this same loan.

ACC  *Yes, Sir.*

MJ  (4) that under the circumstances, your conduct was prejudicial to good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.

ACC  Yes, Your Honor.

MJ  Those are the elements to both Specifications 2 and 3.

During the month of April 1990, you borrowed money from Bonnie and Gary Buening?

ACC  Yes, Sir.

MJ  How much was that?

ACC  $600.00.

MJ  When were you originally to repay that $600.00 loan?

ACC  There was no set date, just whenever I could, Sir.

MJ  No set date?

ACC  No, Sir.

MJ  Well, did you make any payments on that debt in April 1990?

ACC  I made one payment, Sir.

MJ  Was that a $50.00 payment?

ACC  Yes, Sir. I don't know the exact date, but that is the only payment that I did make.

MJ  So, you paid nothing in May?

ACC  No, Sir.

MJ  Or June?

ACC  No, Sir.

MJ  Or July?

ACC  No, Sir.

MJ  And you said there were no exact terms of repayment?

ACC  No, Sir.

MJ  Is that right?

ACC  Yes, Sir.

MJ  Well, let's see; you went May, June, July and August and made no payments during that period of time?

ACC  Yes, Sir.

MJ  Were they getting a little bit antsy as far as getting money from you?

ACC  She really hadn't said anything at that time, Sir.

MJ  Well, did you talk to them as far as establishing this debt in the way of an IOU or a promissory note or anything like that?

ACC  Yes, Sir, I got a promissory note from Bonnie, and I signed it, to pay $50.00 every month.

MJ  When did you do that?  Approximately?

(Captain Walker was looking through his paperwork.)  Captain Walker, do you have a copy of the note?

DC  Yes, Your Honor.  The note was signed in July of 1990, with payments to begin in increments of $50.00, beginning 1 August 1990.  It reflects that $50.00 was paid back on 13 June.

*       *       *

MJ  Have you paid anything more on this note?

ACC  No, Your Honor.

MJ  Okay.

*Again, what was your attitude towards making these payments of 1 September and 1 October 1990 to the Beunings?*

ACC  *I just simply couldn't do it.*

MJ  *No money?*

ACC  *No, Sir.*

MJ  *You were still drawing your pay from the Air Force at that time though, weren't you?*

AC  *Yes, Sir.*

MJ  Well, that being the situation; By the way, the Beunings, are they military or civilian?

ACC  They're civilian.

MJ  Under the circumstances, was your conduct in failing to meet the terms of your financial obligation to the Beunings on 1 September and on 1 October 1990, of a nature to bring discredit upon the Armed Forces, or did it constitute conduct prejudicial to good order and discipline in the Armed Forces?

ACC  Yes, Your Honor.

(Emphasis added.)

---

■ Appellate defense counsel contends that appellant's guilty pleas to these two specifications of dishonorably failing to pay a just debt must be vacated.  *See generally*

Art. 45, UCMJ, 10 USC § 845. She initially premises her argument on her assertion that the record of trial "clearly indicates that appellant's sole reason for not repaying the debt was the inability to pay." Final Brief at 3. She also notes that appellant signed "a legally-binding, interest bearing promissory note" which rebuts any suggestion that her nonpayment was dishonorable as defined by military law. Final Brief at 5. *See* para. 71b(3), Part IV, Manual for Courts–Martial, United States, 1984. Relying on the decision of this Court in *United States v. Gardner*, 35 MJ 300 (CMA 1992), counsel concludes that valid findings of guilty cannot stand on a record which presents no "evidence" of dishonor. *See generally* RCM 910(e), Manual, *supra*.

■ As a preliminary matter, we note that appellant does not argue that the military judge erred by failing to seek explicit clarification of her assertion of financial inability. *See United States v. Epps*, 25 MJ 319, 321 (CMA 1987). On the contrary, the record shows that the military judge immediately asked her if she received her military pay during the periods of nonpayment and that she answered in the affirmative. Instead, her argument is that the evidence of record, as it presently stands, is insufficient as a matter of law to constitute the dishonor required for conviction of this military criminal offense. The standard for resolving this issue is whether the record establishes "a '*substantial* basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 MJ at 436; *see United States v. Schoof*, 37 MJ 96, 104 (CMA 1993); *United States v. Vardiman*, 35 MJ 132, 135 (CMA 1992); *United States v. Pitt*, 35 MJ 478, 480 (CMA 1992). We find no such basis in this record of trial.

■ Appellant first suggests that her guilty-plea responses established the affirmative defense of financial inability. However, we have never expressly held that financial inability is an affirmative defense to a charge of dishonorably failing to pay a just debt. *Cf. United States v. Pinkston*, 6 USCMA 700, 704, 21 CMR 22, 26 (1956) (defense to disobedience of orders). In any event, we have never held that this defense in general applies without regard to an accused's responsibility for his or her financial state. *Id.* On this point, RCM 916 correctly states:

(i) *Inability.* It is a defense to refusal or failure to perform a duty that the accused was, *through no fault of the accused,* not physically or financially able to perform the duty.

### Discussion

The test of inability is objective in nature. The accused's opinion that a physical impairment prevented performance of the duty will not suffice unless the opinion is reasonable under all the circumstances.

*If the physical or financial inability of the accused occurred through the accused's own fault or design, it is not a defense.* For example, if the accused, having knowledge of an order to get a haircut, spends money on other nonessential items, the accused's inability to pay for the haircut would not be a defense.

(Emphasis added.) *See also* para. 216*g*, Manual for Courts–Martial, United States, 1969 (Revised edition). The record before us unequivocally establishes that appellant's monetary situation in September and October 1990 resulted from her own financial scheming.

■ While financial inability by itself may not be a complete defense to a dishonorable failure to pay a just debt, it is a fact to be considered with others in determining whether such a failure was dishonorable. *See United States v. Schneiderman*, 12 USCMA 494, 496, 31 CMR 80, 82 (1961). Such a conclusion stems from well-established military law that all the facts of the case must be considered in finding dishonor. Paragraph 71c, Part IV, 1984 Manual, *supra*, reflects this principle of military law:

c. *Explanation.* More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations. For

a debt to form the basis of this offense, the accused must not have had a defense, or an equivalent offset or counterclaim, either in fact or according to the accused's belief, at the time alleged. The offense should not be charged if there was a genuine dispute between the parties as to the facts or law relating to the debt which would affect the obligation of the accused to pay. The offense is not committed if the creditor or creditors involved are satisfied with the conduct of the debtor with respect to payment. The length of the period of nonpayment and any denial of indebtedness which the accused may have made may tend to prove that the accused's conduct was dishonorable, but the court-martial may convict only if it finds from all of the evidence that the conduct was in fact dishonorable.

The recent decision of this Court in *United States v. Gardner*, 35 MJ 300 (1992), reaffirmed this principle. It was a contested case where the defense asserted on appeal that the prosecution had failed to introduce sufficient evidence of dishonor to establish the offense of dishonorable failure to pay just debts. Appellant in that case argued "that the prosecution was required to affirmatively establish that he was able to pay, by producing his pay records or similar proof." *Id.* at 301. This Court noted that "the prosecution presented no evidence of appellant's financial situation" *and* "no evidence of deliberate nonpayment or of a grossly indifferent attitude toward the debt." *Id.* at 302.

*United States v. Gardner, supra,* however, does not require that the findings of guilty in appellant's case be set aside. Her case involved guilty pleas where the prosecution was not required to present any evidence as to the charged offenses. Appellant, also, specifically admitted in the stipulation that failure to pay was "dishonorable" and "without excuse or justification." More importantly, consistent with the decision of this Court in *United States v. Gardner, supra,* she also admitted to the judge that she received her military pay during the time of nonpayment and prosecution exhibit 2 established that pay as $724.20 per month. In light of the $50 debt owed each month, we consider her naked claim of financial inability to be blatantly self-serving and insufficient to invalidate her pleas of guilty. *See United States v. Clark,* 28 MJ 401, 406–07 (CMA 1989) (mere "tactical possibility of raising a defense does not of itself warrant rejection of an otherwise provident plea").

■ Turning to appellant's remaining contention, we must now consider whether the record of trial as a whole factually supports findings of dishonor in this case. We again note that appellant pleaded guilty to the charged offenses and specifically admitted that her nonpayments of the above debts were dishonorable. *See generally United States v. Harrison,* 26 MJ 474 (CMA 1988). Moreover, she acknowledged that during the 6–month period immediately prior to the two charged nonpayments, she had made only one payment. *See United States v. Gardner,* 35 MJ at 301. Admittedly, during this same period, she did sign a promissory note with respect to this loan in July of 1990, which called for monthly payments beginning in August 1990. However, she then wrote a bad check to cover her first payment under that agreement and made no repayment of this check or any other payments thereafter.[2] *See United States v. Atkinson,* 10 USCMA 60, 62, 27 CMR 134, 136 (1958). *Cf. United States v. Richardson,* 15 USCMA 400, 403, 35 CMR 372, 375 (1965). Finally, appellant's own responses in the record of trial established that the charged failures to pay these debts were not a result of simple negligence but rather her deliberate tactic of avoidance accompanied with gross indifference towards her creditors.[3] *See United States v. Kirksey,*

2. *See* n. 1, *supra.*

3. Appellant commented on her general attitude during the period in question as follows:
 MJ So, you owed them money?
 ACC Yes, Sir.
 MJ But you never went back and offered them money?

ACC No, Sir.
 MJ Tell me, what was your attitude regarding these obligations that you had incurred by giving these checks which you knew, pardon me, subsequent to the issuance of them, that they were no good?

6 USCMA 556, 559–61, 20 CMR 272, 275–77 (1955). All of these circumstances together constitute a proper factual basis for supporting appellant's challenged guilty pleas.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

GIERKE, Judge (dissenting):

In my view the military judge should not have accepted the questioned guilty pleas without further inquiry. Appellant's assertion that she was unable to pay the debt was inconsistent with a *dishonorable* failure to pay. If an accused asserts matters inconsistent with a plea of guilty, the military judge must reject the plea unless the inconsistency is resolved. *United States v. Davenport*, 9 MJ 364, 367 (CMA 1980). *See* RCM 910(e), Discussion, Manual for Courts–Martial, United States, 1984. In this case the military judge failed to resolve the inconsistency.

The majority's reliance on RCM 916(i) is misplaced. RCM 916(i) applies to physical or financial ability to comply with military orders; it has nothing to due with financial ability to pay a debt. RCM 916(i) is based on paragraph 216*g*, Manual for Courts–Martial, United States, 1969 (Revised edition), which read in pertinent part as follows: "The inability of an accused through no fault of his own *to comply with the terms of an order to perform a military duty* constitutes a defense." (Emphasis added.) *See* Drafters' Analysis of RCM 916(i), 1984 Manual, *supra* at A21–57.

This Court has never held that financial inability to pay a debt must be due to extrinsic facts beyond the accused's control. To the contrary, paragraph 71c, Part IV, 1984 Manual, *supra*, states that "[m]ore than negligence ... is necessary" to constitute the

offense. *See also United States v. Cummins*, 9 USCMA 669, 674, 26 CMR 449, 454 (1958) (instruction permitting conviction on basis of simple negligence erroneous); *United States v. Kirksey*, 6 USCMA 556, 559, 20 CMR 272, 275 (1955) (negligent failure to pay debt not an offense).

The majority opinion places great weight on the fact that the military judge asked appellant "if she received her military pay" and that "she answered in the affirmative." 39 MJ at 100. The majority ignores appellant's responses during the plea inquiry indicating that she was deeply in debt to many creditors. Her receipt of military pay is of little consequence because the military judge inexplicably failed to ask the obvious question, "What did you do with your pay?" We cannot determine from the record whether she spent her pay on more pressing debts, necessities of life, or frivolity.

The emphasized portion of the plea inquiry in footnote 3 of the majority opinion refers to evasion of the creditor, not the debt, because appellant was unable to pay the debt. The evasion referred to in paragraph 71c, Part IV, 1984 Manual, *supra*, and in *United States v. Gardner*, 35 MJ 300 (CMA 1992), refers to evasion of the debt, not the creditor. When the military judge asked appellant, "[W]hat was your attitude towards making these payments ...?," she responded, "I just simply couldn't do it." The words, "[H]ey, I don't have money, that's the way the ball bounces" (39 MJ at 101 n. 3) were the judge's words, not appellant's. Appellant merely acquiesced.

The majority's references to appellant's "scheming" (39 MJ at 100) and writing a "bad check" (39 MJ at 101) are not supported by the record. In the first place, she was found not guilty of violating Article 123a by writing the check. Secondly, the only evi-

ACC *I completely avoided them. I knew I didn't have the money to pay them.*
MJ *Okay, in other words, hey, I don't have money, that's the way the ball bounces?*
ACC *Yes, Sir.*
MJ *Is that a correct summary?*
ACC *Yes, Sir.*
MJ You knew this was wrong?
ACC Yes, Sir.

MJ Under the circumstances, was your conduct in not making good on these checks, in other words, paying these debts, and failing to meet the terms of your financial obligations, of a nature to bring discredit upon the Armed Forces or prejudicial to good order and discipline?
ACC Yes, Sir.
(Emphasis added.)

dence of appellant's state of mind regarding that check (which was uttered on August 3) is in the plea inquiry where she states that she did not learn that the account had been closed until "[t]he 10th or 15th" and her unsworn statement where she states that she did not know that the account had been closed until a week after she had written the check. After the checks bounced, she learned that her husband had not been putting money in the account as he had represented, and at that point appellant had no money to redeem the check or pay the debt.

I would hold that appellant's assertion of inability to pay was inconsistent with her guilty pleas and that the inconsistency was not resolved. I would hold further that the military judge failed to establish an adequate factual predicate for the legal conclusion that appellant's failure to pay the debt was dishonorable.