UNITED STATES, Appellee

v.

**Jeffrey A. BESTER, Senior Airman
U.S. Air Force, Appellant.**

No. 93–1478.
CMR No. S28738.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 14, 1994.

Decided May 10, 1995.

For Appellant: *Captain Jeffrey B. Miller*
(argued); *Colonel Jay L. Cohen* and *Captain
Eric N. Eklund* (on brief).

For Appellee: *Colonel Thomas E. Schlegel*
(argued); *Colonel Jeffery T. Infelise* (on
brief); *Major Barnard H. Madsen.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. Appellant was tried by a special court-martial composed of a military judge sitting alone at Lackland Air Force Base, Texas,[1] on August 13, 1992. Pursuant to his pleas, he was found guilty of absence without leave (AWOL) (194 days), uttering several bad checks, and dishonorably failing to pay a just debt, in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 USC §§ 886 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 100 days, and reduction to E–1. On November 10, 1992, the convening authority approved the above sentence after modifying the findings concerning the bad-check offense. The Court of Military Review[2] affirmed the modified findings and sentence without opinion on July 23, 1993.

2. On February 1, 1994, this Court granted review on the following assigned issue:

WHETHER APPELLANT'S PLEAS OF GUILTY TO CHARGE III AND ITS SPECIFICATION WERE IMPROVIDENT, IN THAT APPELLANT INDICATED THAT HE FAILED TO PAY THE CHARGED DEBT BECAUSE HE WAS UNABLE TO DO SO.

In view of the entire record before us, we hold that appellant's pleas of guilty were not improvident as a result of his averred financial inability to pay his debts. *See United States v. Hilton*, 39 MJ 97 (CMA 1994). *Cf. United States v. Gardner*, 35 MJ 300 (CMA 1992).

3. Appellant was charged, *inter alia*, with dishonorable failure to pay a just debt, in violation of Article 134. The specification in question states:

1. The decision below erroneously reflects that trial was held at Brooks Air Force Base, Texas.

2. *See* 41 MJ 213, 229 n.* (1994).

Specification: In that [appellant], being indebted to Valley–Hi Inn, San Antonio, Bexar County, Texas, in the aggregate sum of $1,029.00 for rent of a motel room from 1 June 1992 until 14 July 1992, which amount became due and payable twice per month (on or about the 1st and 15th day of each month) based on a monthly retail rate of $500,00, did, on divers occasions between on or about 15 May 1992 and 15 July 1992, dishonorably fail to pay said debt.

The military judge found appellant guilty of this specification but reduced the amount of the debt to $750.00.

4. The following facts were stipulated to by appellant concerning the charged offenses in pertinent part:

\* \* \*

[j] The Accused departed the Philippines on or about 15 November 1991, and returned to the United States enroute to his new duty station, Brooks Air Force Base, Texas.

[k] The Accused arrived in San Antonio, Texas, on 18 November 1991, and rented a room at the Valley–Hi Inn, 100 Valley–Hi Drive, San Antonio, Texas. The Accused's plans were to contact his girlfriend and eventually move back into the apartment they had previously shared.

[l] After several days, Specialist Evans informed the Accused that she was seeing someone else and did not wish to resume their relationship. The Accused became extremely upset and distraught over her decision. In addition, the Accused was responsible for several financial obligations that his former girlfriend failed to pay on his behalf. The Accused had provided money to Specialist Evans to take care of some of his financial matters while he was stationed at Clark AB, but she had used the money for herself.

[m] The Accused continued to live at the Valley–Hi Inn. Because of the emotional trauma suffered by the Accused in regards to his previous duty assignment and the loss of his girlfriend, the Accused decided not to report to the 6570 SPS [Security Police Squadron] on 3 January 1992.

[n] The Accused wrote two checks to the Lackland Air Force Base Exchange on 30 December 1991 and 4 January 1992. The checks were numbered 332; for $35.00 (Prosecution Ex. *# 3* ), and 333 for $27.75 (Prosecution Ex. *# 4* ), respectively. Both checks were drawn on the Accused's checking account at Security Service Federal Credit Union. The Accused received cash, merchandise, or something else of value in exchange for the checks. The Accused did not have sufficient funds in his checking account when the checks were presented for payment by the Lackland Base Exchange because on or about 1 January 1992, he used his ATM card to withdraw money from his account. The Accused did not provide Security Service Federal Credit Union with an address to which the Accused's bank statements could be mailed for eight months. The Accused agrees that his actions, upon writing the checks and thereafter through the date of his apprehension, exhibited gross indifference in the maintenance of his checking account.

[o] On 20 January 1992, the Accused made an unsuccessful attempt at suicide by trying to overdose on Tylenol pills. In anticipation of the suicide, the Accused wrote several letters to various friends and family members.

[p] After the suicide failed, the Accused knew he should report to Brooks AFB, but did not want to get caught, so he reduced his contact with the outside world. He did not dispose of his military identification card or his uniform.

[q] The Accused continued to receive his military pay by "sure-pay" deposit twice a month. He would withdraw money from his savings and checking accounts through an automatic teller machine (ATM) and his ATM card from Security Service Federal Credit Union. The Accused used the cash to pay for his room rent of $500.00 per month. Occasionally, the Accused would fall behind in his rent and would attempt to make it up the next month.

[r] The Accused did not report to the 6570th SPS, Brooks AFB, TX, on 12 May

1992. No person with authority gave the Accused permission to be absent from his unit at any time from the 3 January 1992 until 15 July 1992, the date of his apprehension.

[s] On 15 June 1992, the Accused's military pay stopped being deposited into his checking account. He was unable to pay his room rent. Eventually, his outstanding bill totalled $1,029.00.

[t] On 15 July 1992, TSgt Frank Morales and Sgt Gary Paez, both of the 6570th SPS, and TSgt Timothy Rupp, USAFR, went to the Valley–Hi Inn based on information received by Sgt Paez during a witness interview. TSgt Rupp is a homicide detective in the San Antonio Police Department. TSgt Rupp contacted the motel manager, Sylvia Barlett. Ms. Barlett informed TSgt Rupp that the Accused owed back rent and phone charges of $1,029.00 (Prosecution Ex. #5). Ms. Barlett told TSgt Rupp that she was told by the accused that the military owed him back pay and that was the reason he had not been able to pay his bills since 1 June 1992. The accused's bill was due and payable on 15 May 1992. Ms. Barlett expected payment on June 1, 1992, but received no payments from the accused. Ms. Barlett stated she wanted to file criminal charges of Theft of Services, a third degree felony in Texas, against the accused.

5. The record of trial also contains the following oral admissions from appellant concerning this offense:

MJ: After the paycheck on the 1st of June, then all paychecks stopped, is that correct? Military pay stopped?

ACC: Yes, sir.

MJ: And that's when you became broke, so to speak?

ACC: Yes, sir.

MJ: Could you have gotten money somehow if you had gone to work, or were you working?

ACC: I was not working.

MJ: Do you believe you could have gotten some money if you had gone to work and paid off that debt?

ACC: Yes, sir.

MJ: Do you believe also if you had returned to the Air Force, you may have gotten military pay?

ACC: As I believed the status I was in, which was my AWOL status, I didn't believe I was going to get paid. I didn't believe I was going to get financial help for my bill.

MJ: Okay. Do you admit that your failure to pay this debt was dishonorable?

ACC: Yes, sir, I do.

MJ: Do you admit that it was either conduct that was prejudicial to the good order and discipline of the Armed Forces or was of a nature to bring discredit upon the Armed Forces?

ACC: Yes, sir, I do.

MJ: Why do you think that?

ACC: Well, the Armed Services set a high standard, and I believe by not paying [my] $1,029 bill and living there that does not—is not Air Force standard acceptability.

MJ: You think, in other words, it brings discredit upon the Armed Forces when its members don't pay their bills?

ACC: Yes, sir.

MJ: Counsel, I believe, again, we have sufficient information to accept a provident plea. Does the counsel for either side, though, wish that I ask additional questions?

TC: No, Your Honor.

DC: No, Your Honor.

---

6. Appellant was charged with a dishonorable failure to pay a just debt to a motel in Texas. He pleaded guilty to this offense, but the military judge only found him guilty of dishonorable failure to pay a just debt of a lesser amount to this civilian creditor. On appeal he contends that a matter inconsistent with his pleas was raised at trial and, therefore, the military judge erred by accepting his pleas to this offense. In particular, he argues that his asserted "inability to pay" this debt precluded a finding that his failure

to pay was dishonorable. *See generally United States v. Schneiderman,* 12 USCMA 494, 496, 31 CMR 80, 82 (1961).

7. The question before this Court is whether appellant's admission that he was unable to pay his rent to the Valley–Hi Inn invalidated his guilty plea to dishonorably failing to pay a just debt in violation of Article 134. *See United States v. Hilton,* 39 MJ 97 (CMA 1994); *cf. United States v. Gardner,* 35 MJ 300 (CMA 1992). We have often said that this Court will not set aside a guilty plea unless there is "a 'substantial basis' in law and fact for questioning the guilty plea." *See United States v. Prater,* 32 MJ 433, 436 (CMA 1991), *quoted* in *United States v. Hilton, supra* at 100. Accordingly, our particular inquiry in this case is whether financial inability *per se* is a defense or otherwise precludes a conviction for failure to pay a just debt in violation of Article 134. *Cf. United States v. Gardner, supra* (contested case holding that evidence of mere failure to pay existing debt is insufficient to find dishonor).

8. Recently, in *United States v. Hilton, supra* at 100, this Court again recognized that "financial inability ... is a fact to be considered with others in determining whether such a failure was dishonorable." Here, the military judge fully questioned appellant about his financial inability to pay, the reasons for this inability, and other circumstances surrounding his failure to pay. Appellant admitted that he was absent without

leave for some 6 months and that the military finally stopped his automatic pay deposit. He also conceded that he was physically able to find other work and pay this debt. He further admitted that he deliberately deceived the Valley–Hi Inn by informing it that his inability to pay was the fault of the military's temporary failure to remit to him back pay. Finally, he admitted that his failure to pay was dishonorable within the meaning of Article 134.

9. This clearly was not the situation presented in *United States v. Gardner, supra,* where a majority of this Court found no evidence that showed that the accused's failure to pay a just debt was deceitful, evasive, or deliberate. 35 MJ at 302. Moreover, any inconsistency arising as a result of appellant's claim of insolvency was resolved by the judge's questioning which revealed his capability to solve his financial problems but his deliberate refusal to do so. *Cf. United States v. Hilton, supra* at 102 (Gierke, J., dissenting). Accordingly, appellant's admission of financial inability in the total circumstances of this case did not require that his guilty pleas be set aside. *See generally United States v. Smith,* 34 MJ 319, 324 (CMA 1992) (record must be considered as a whole in evaluating providence of guilty pleas).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.