CRAWFORD, Chief Judge
(dissenting):
At the time appellant committed the offenses to which he pled guilty and was convicted, he was a Captain with about seventeen years of service. The record of trial, supported by appellant’s own statements, reflects that his fiscal irresponsibility began when he arrived in Korea for an unaccompanied tour. There, he met a “juicy girl,” a female hired by a bar to encourage men to purchase drinks. Apparently appellant fell in love with this girl and began to expend large amounts of money to pay “bar fines.” A “bar fine” is an amount of money equal to the total sums that a “juicy girl” would earn during an evening of persuading male patrons to purchase drinks. During this courtship (which ended in marriage), appellant wrote and uttered a total of over $14,000 in dishonored checks.
During this same period, appellant purchased items from the Army and Air Force Exchange Service (AAFES), using the deferred payment plan (DPP) as the payment vehicle. The specification to which appellant pled guilty shows that between October 1999 and December 1999, he dishonorably failed to pay AAFES the sum of approximately $428.45.
The stipulation of fact relates that:
Between 9 October and 8 December 1999, [appellant] failed to pay a just debt to AAFES for charges he made on his Deferred Payment Plan (DPP) in the amount of $428.45. He did not make the payments because his prior bad checks had resulted in garnishments of his pay such that he could not make the DPP payments; he further did not attempt to work out an acceptable payment plan with AAFES. His failure to pay was dishonorable and was prejudicial to good order and discipline in the armed forces. Further, it was of a nature to bring discredit on the armed forces in that it had a tendency to diminish the esteem with which the Air Force is viewed by employees of AAFES and by others who might hear of his actions.
(Emphasis added.)
The discussion of this offense with the military judge, 56 MJ at 379-80, clearly shows that appellant understood the offense to which he was pleading guilty and gave his assent to the accuracy of the stipulation of fact. See United States v. Vonn, — U.S. -, -, 122 S.Ct. 1043, 1052-53, - L.Ed.2d -, - (2002)(omission from guilty plea inquiry results in reversal of conviction only when appellant demonstrates his substantial rights were affected, i.e., no automatic reversal when mistake conducting inquiry under Fed.R.Crim.P. 11 does not impact on “the overarching issues of knowledge and voluntariness”); ROM 910(c) and (e), Manual for Courts-Martial, United States (2000 ed.).
The standard of review for determining the providence of a guilty plea is whether there is a substantial conflict raised in the record between appellant’s plea of guilty and some inconsistent statement. See, United States v. Bickley, 50 MJ 93 (1999). Rejecting a guilty plea “requires that the record of trial show a ‘substantial basis’ in law and fact *384 for questioning [that] plea.” United States v. Prater, 32 MJ 433,436 (CMA 1991).
At issue is whether appellant’s conduct was “dishonorable,” whether appellant understood the definition of “dishonorable” and believed his failure to pay his DPP debt was in fact dishonorable, and whether the inquiry-under United States v. Care, 18 USCMA 535, 40 CMR 247 (1969), taken as a whole, supports the guilty plea. In my opinion, this Court’s holdings in United States v. Bester, 42 MJ 75 (1995), and United States v. Hilton, 39 MJ 97 (CMA 1994), are dispositive of appellant’s arguments.
The gravamen of appellant’s contention, supported by the majority, is that AAFES, not appellant, is at the root of the problem. In short, appellant was unable to pay his DPP debt because AAFES garnished his salary in order to recoup thousands of dollars in worthless checks appellant had uttered at AAFES. Appellant’s logic reminds me of Flip Wilson’s “the devil made me do it” comedy routine.
Our cases and RCM 916(i), Manual for Courts-Martial, United States (2000 ed.), make the defense of inability to pay available only if the accused can show:
1. An extrinsic factor(s) over which the accused had no control; and
2. Noncompliance was not due to the fault of the accused after he had an obligation to pay, and the extrinsic faetor(s) could not be remedied by the accused’s timely legal efforts.
The defense of inability to pay was not available in Bester, nor in Hilton, both supra; nor is it available to appellant. It was appellant who created his own situation by having more debts than earnings, and he should not be allowed to use a situation of his own making as an excuse to defeat a charge of dishonorable failure to pay just debts.
“If the physical or financial inability of the accused occurred through the accused’s own fault or design, [the inability to pay] is not a defense.” RCM 916(i) Discussion. Therefore, in order for the majority to be correct in its reversal, appellant’s inability to pay needed to have been completely out of his hands, and not of his own creation. Yet, appellant himself stated that his actions were dishonorable based on his gross indifference to his prior financial situation.
“While financial inability by itself may not be a complete defense to a dishonorable failure to pay a just debt, it is a fact to be considered with others in determining whether such a failure was dishonorable.... Such a conclusion stems from well-established military law that all the facts of the case must be considered in finding dishonor.” Hilton, 39 MJ at 100 (citation omitted). In other words, the record must be considered as a whole. Id.
In reading the record as a whole, I am convinced that when appellant pled guilty, he understood the meaning of “dishonorable.” Any contention that the military judge failed to define “dishonorable” in the context of appellant’s DPP debt is without substance. The record of trial clearly reflects that the military judge informed appellant of the elements of the three specifications under Charge III, and then explained the meaning of various words, to include dishonorable conduct, included within those specifications. There is no requirement for a military judge sua sponte to stop in mid-sentence during a providence inquiry to explain a definition. Furthermore, the Care inquiry, taken as a whole, neither establishes a defense to the crime in question nor reflects any inconsistencies that should have led the military judge to reject the guilty plea.
Accordingly, I would affirm the decision of the Air Force Court of Criminal Appeals.