SULLIVAN, Senior Judge
(dissenting):
Appellant, a thirty-six-year old Captain with seventeen years of service, pleaded guilty in this case on the advice of competent counsel. He voluntarily entered a plea of guilty and admitted that his repeated failure to make his deferred payment plan payment without personally contacting service Exchange authorities was dishonorable. On appeal before the Court of Criminal Appeals and this Court and, again, with the advice of competent counsel, he made no claim that his guilty plea was invalid. Yet, a majority of *385 this Court on its own granted a specified issue on this question, and now a majority sets aside his guilty plea to the above offense. I think this Court should, like the trial judge and appellate court below, take this experienced and well-advised officer at his word — that he was guilty of the charge of dishonorably failing to pay a just debt.
Turning first to the question of dishonor, or what was dishonorable conduct, I agree with Chief Judge Crawford. The military judge advised appellant what “dishonorable” meant in the context of his discussion of appellant’s dishonorable failure to maintain sufficient finds to cover numerous personal checks. He said, “An accused’s conduct in maintaining his bank account must have been dishonorable, that is, a failure which is fraudulent, deceitful, a willful evasion, made in bad faith, deliberate, based on false promises, or which indicates a grossly indifferent attitude towards the status of one’s bank account and that person’s just obligations.” (R.37) The judge used that same term to describe appellant’s failure to make three successive monthly payments of $428.45 after he had earlier issued two bad checks to cover his debt to AAFES. (R.47-48, 50-52) See paras. 68c and 71c, Part IV, Manual for Courts-Martial, United States (1998 ed.)(using same definition of dishonor for bad checks and failure-to-pay offenses). There was no confusion in this ease on the meaning of dishonor.
Secondly, the majority overlooks portions of this record which overwhelming support appellant’s plea of guilty to dishonorably failing to pay a just debt. The record shows that as a lieutenant, appellant divorced his officer wife in 1997 and assumed $49,000 in credit-card debt. He had accumulated that debt with his first wife and was required to make payments of $1600 per month. (R.275, 277)
In September of 1998, appellant was transferred to Osan, Korea, where he met his soon-to-be second wife, L. (R.278) She was a “juicy girl” in a downtown bar, a female employed by a local bar whose job was to encourage men to purchase drinks. (R.279) During his courtship, appellant spent large amounts of money to pay “bar fines,” sums equal to the amount of money that she was expected to produce for the bar during the evening by her persuading male companions to drink. (R.285-86) It was these bar fine payments which caused appellant to write the majority of his dishonored checks and be unable to make his deferred payments to the Exchange when due.
All told, appellant made and uttered a total of $14,906.18 in dishonored checks. About $14,000 of these were uttered within an eleven-month period beginning in November 1998 and ending in September 1999. In late September 1999, appellant discussed his financial situation with his commander and placed himself in the hands of a credit counselor. In October, November, and December of 1999, however, he failed to make payments under a deferred payment program to AAFES without personally contacting that organization. Neither his subsequent attempt to use the Air Force Aid Society as a financial intercessor, nor his later payment of this debt, logically or legally prelude a finding of dishonor.
Thirdly, as to appellant’s inability to pay, this Court has held on several occasions that one’s financial condition does not excuse this crime where the inability to pay was the product of one’s own dereliction. See United States v. Bester, 42 MJ 75 (1995); United States v. Hilton, 39 MJ 97 (CMA 1994). The majority suggests appellant’s financial plight resulted from his divorce and assumption of a large credit card debt. However, it is clear from the record as a whole that the financial breakdown which resulted in his nonpayment of his just debts stemmed from his financial efforts to prevent his girlfriend from having to hustle drinks. Only four of the bad checks in this case were made and uttered prior to appellant’s arrival in Korea, and could be logically attributed to his earlier divorce.*
Finally, this is not a case like United States v. Schneiderman, 12 USCMA 494, 31 *386 CMR 80 (1961), where the entire tenor of the accused’s statement was inconsistent with a finding of dishonor. Admittedly, appellant did testify that “[he] had no cash on hand,” and that “[i]f [he] would have had the cash, [he] would have made the payments.” (R.51-52) Such post-offense speculation, however, does not constitute a defense to a dishonorable failure to pay a just debt. Moreover, the majority’s over-reliance on these self-serving statements to the exclusion of the remainder of the record, which overwhelmingly established appellant’s financial arrogance, is certainly not warranted. Again, I would take appellant at his word and affirm his guilty plea for a dishonorable failure to pay a just debt. See United States v. Harrison, 26 MJ 474 (CMA 1988).

 The total amount of these four checks was $1,100. In addition, appellant made and uttered an additional dishonored check for $300 which, while presented after he arrived in Korea, does not appear to be related to his overall financial downfall.