# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

### UNITED STATES

### v.

### Nicole R. McAULEY
### Yeoman Second Class (E-5), U.S. Coast Guard

### CGCMG 0180

### Docket No. 1177

### 9 January 2004

General Court-Martial convened by Commander, Maintenance & Logistics Command Atlantic Area. Tried at Cape May, New Jersey, on 12 June 2002.

| | |
|---|---|
| Military Judge: | CAPT Sharon W. Fijalka, USCG |
| Trial Counsel: | LCDR Larry R. Kennedy, USCG |
| Detailed Defense Counsel: | LT Heather D. Partridge, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG[1] |
| | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR Daniel J. Goettle, USCG |

### BEFORE
### PANEL TWO
### BAUM, KANTOR, & PALMER
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to her pleas of guilty, entered in accordance with a pretrial agreement, Appellant was found guilty of the following offenses: one specification of conspiracy to steal and wrongfully dispose of military property of the United States of a value greater than $100, in violation of Article 81, Uniform Code of Military Justice (UCMJ); one specification of wrongful disposition of military property of the United States of a value greater than $100, and one specification of sale of military property of a value greater than $100, in violation of Article 108, UCMJ; and one specification

of larceny of military property of the United States of a value greater than $100, in violation of Article 121, UCMJ. The judge sentenced Appellant to a bad conduct discharge, confinement for fifteen months, reduction to E-1, and a $200 fine. The Convening Authority approved the adjudged sentence, but suspended all confinement in excess of eight months, pursuant to the sentence terms of the pretrial agreement. Before this Court, Appellant has assigned two errors.

## Assignment I

In her first assignment, Appellant contends that her pleas of guilty were improvident because of mistaken advice by the military judge concerning the maximum confinement that she faced. The judge advised Appellant that confinement for thirty-one years could be imposed, rather than four years confinement, which Appellant contends was the maximum authorized for the alleged offenses. According to Appellant, this misunderstanding affected the providence of her pleas, and, at a minimum, necessitates reassessment of the sentence. Issues raised by this assignment were addressed in the companion case of *United States v. Ontiveros*, 59 M.J. 639 (C.G. Ct. Crim. App. 2003) and resolved contrary to Appellant's position. That disposition is controlling here and the assignment is rejected for that reason.

## Assignment II

In her second assignment, Appellant contends that the military judge erred in accepting her pleas of guilty to two separate specifications alleging wrongful disposition of the same military property. Appellant notes that she pled guilty to one specification alleging wrongful disposition of three body armor vests, military property of the United States, by giving them to Lee Pantellis,[2] a former boyfriend, with the understanding that he would sell them and split the proceeds with her. She also pled guilty to a second specification of selling one of those same body armor vests to another individual on or about the same date. Appellant contends that the facts of the case establish only one wrongful disposition, not two. She asserts that without

---

[1] CDR Good filed the assignment of errors and brief in this case.

evidence that she somehow reacquired dominion and control over the vests that she gave to Lee Pantellis, she cannot be held liable for every subsequent disposition, including the later sale to the other individual. For that reason, Appellant submits that the military judge erred in accepting her pleas to both specifications. She contends that specification two, the sale of one vest, should be dismissed as multiplicious with specification one, the disposition of three vests, and the sentence reassessed accordingly. The factual basis for Appellant's pleas was developed through a stipulation of fact and Appellant's answers to the judge during the guilty plea inquiry. The Government maintains that Appellant's responses to the judge and the stipulation of fact make it clear that she sold one piece of body armor to one individual and then separately disposed of the other two pieces. In reaching this conclusion, the Government finds the stipulation and Appellant's inquiry answers compatible. In reality, they are at odds.

## Stipulated Facts

The stipulation has Appellant driving to New York with the three body armor vests in a suitcase to be dropped off at Lee Pantellis' apartment. It goes on to state that, upon arrival, she met Lee Pantellis' brother, Ladd, and, together, they approached a Mr. Bornholdt, the apartment's doorman, and Appellant negotiated a price with him for one of the body armor vests, removed it from the suitcase, and sold it to him for $200. According to the stipulation, it was after that transaction that she gave the suitcase containing the other two body armor vests to Lee Pantellis with the understanding that he would sell them and split the proceeds with her. This account clearly establishes two separate offenses: a sale by Appellant of one vest to Mr. Bornholdt, the apartment doorman, and disposal by her of the other two body armor vest to Lee Pantellis.

## Responses to the Judge's Plea Inquiry

---

[2] The specification and the record transcript refer to this individual as Lee Pantellis, but the stipulation of fact calls him Leigh Patellis. Since it is not clear which spelling of the name is correct, we will rely on the spelling referred to in the specification.

The sequence of events changed in Appellant's description to the judge. After the judge read the stipulation, she asked Appellant if she took the vests to New York, and sold one to one fellow and gave two to somebody else, while there. Appellant conferred with her counsel and responded as follows:

> ACC: Ma'am, actually, one weekend I went up and dropped them off, and it wasn't until the following weekend that one of the vests was sold and the other two vests remained at New York.
>
> MJ: So on December 29th you took them to New York, but you didn't actually sell one that weekend?
>
> ACC: That's correct, ma'am. I'm not positive on the dates, but it was on or about the 29th of December.
>
> MJ: You did sell to Mr. Bornholdt but not on the 29th of December. Is that what you're telling me?
>
> ACC: Yes, ma'am. It wasn't the same time that the vests were dropped off that one of the vests was sold to Mr. Bornholdt.
>
> MJ: So you took a suitcase with three vests to New York. Dropped them off at Mr. Pantellis'?
>
> ACC: Yes, ma'am.
>
> MJ: On the 29th of -- on or about the 29th of December. He has the suitcase with the three vests?
>
> ACC: Yes, ma'am.
>
> MJ: You went back at a later time? And that's when one was sold to Mr. Bornholdt?
>
> ACC: Yes, ma'am.
>
> MJ: And Mr. Pantellis had the other two, still?
>
> ACC: Yes, ma'am.
>
> MJ: You gave those vests to Mr. Pantellis with the understanding that he would sell them?

ACC:  Yes, ma'am.

MJ:  And you would split the proceeds with him?

ACC:  Yes, ma'am.

MJ:  And then you would take the proceeds of your share and split them with Petty Officer Ontiveros?

ACC:  Yes, ma'am.

MJ:  You took three vests?

ACC:  Yes, ma'am.

R. at 30-31.  These answers do not explicitly state that Appellant personally arranged and consummated the sale to Mr. Bornholdt in a face-to-face meeting with him.

### Effect of Appellant's Unsworn Statement at Sentencing

In an unsworn statement by Appellant prior to sentencing she makes it clear that she did not personally arrange and consummate the sale to Mr. Bornholdt.  The unsworn statement describes how Appellant obtained the three vests from her co-conspirator, Gunner's Mate Second Class Ontiveros, and, then, details the subsequent events, as follows:

> The following weekend I went to New York City to give them to Lee.  At that time I was just dropping them off, and I did not receive any money from them.  The following weekend I went back to New York.  When I arrived at Gateway Plaza, Lee's brother Ladd was waiting for me.  Ladd told me that the doorman was going to give me money for one of the vests.  He gave $200 to Ladd who in turn gave the money to me.  I had no idea as to what kind of arrangement Lee had with the doorman.  The next day when I spoke with Lee, he told me that he hadn't sold the other two yet.  That was the last time I have ever spoke to Lee.

R. at 148.  From this account, while it is possible that Appellant and Ladd approached Mr. Bornhardt and collected the $200, it sounds more likely that the sale and collection of the money was made earlier by Lee Pantellis, or his brother Ladd, and that $200 was given to Appellant by

Ladd upon her arrival. If that is what happened, it would have been in accord with the initial arrangement with Lee Pantellis to compensate Appellant for any sales of the three vests. Thus, Appellant's disposal of the three vests by leaving them with Lee Pantellis satisfied the plea of guilty to the specification alleging disposition of the three vests to him, and the sale of one of those vests to Mr. Bornhardt would have been effected without Appellant ever regaining dominion and control over that vest. Under this arrangement, Appellant's plea of guilty to sale of that one vest would not be factually supported. This account, however, was in direct conflict with the representation in the stipulation of fact, and, while not directly in conflict with Appellant's answers to the judge, those answers leave out details necessary for determining whether Appellant had dominion and control over the one vest in order to effect a sale to Mr. Bornhardt. Rule for Courts-Martial 910(h)(2), Manual for Courts-Martial, United States, (2002 ed.) requires the following:

> If after findings but before the sentence is announced the accused makes a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty on which a finding is based, the military judge shall inquire into the providence of the plea. If, following such inquiry, it appears that the accused entered the plea improvidently or through lack of understanding of its meaning and effect a plea of not guilty shall be entered as to the affected charges and specifications.

Furthermore, Article 45(a) UCMJ states:

> If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plea, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

6

**Conclusion**

Based on the foregoing, we have concluded that Appellant's unsworn statement at sentencing substantially conflicts with a plea of guilty to sale of a body armor vest to Mr. Bornholdt after Appellant had disposed of the three vests by leaving them with Lee Pantellis, and that the plea inquiry should have been reopened to resolve this substantial conflict. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). Without such corrective action, we cannot affirm the finding of guilty of sale of the one body armor vest to Mr. Bornhardt. As The Court of Appeals for the Armed Forces stated in *United States v. Bullman,*"[o]n appeal, a guilty plea should be overturned only if the record fails to objectively support the plea or there is 'evidence in 'substantial conflict' with the pleas of guilty.' *See United States v. Higgins*, 40 M.J. 67, 68 (CMA 1994)." *United States v. Bullman*, 56 M.J. 377, 381 (2002). The record lacks an adequate factual basis to support that conviction. Accordingly, we will set aside the finding of guilty to that offense.

After review of the record pursuant to Article 66, UCMJ, the finding of guilty to specification 2 of Charge II is set aside and the specification is dismissed. The remaining findings of guilty are deemed correct in law and fact and are affirmed. We have determined that even if the trial judge had found Appellant not guilty of specification 2 of Charge II, she would not have imposed a lesser sentence for the remaining findings of guilty. We have reassessed the sentence and have concluded that it is appropriate and should be approved. Accordingly, the sentence as approved and partially suspended below is affirmed.

Judge KANTOR and Judge PALMER concur.



For the Court,

Roy Shannon Jr.
Clerk of the Court