# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Jake W. SCHIEWE,
### Boatswain's Mate Third Class (E-4), U.S. Coast Guard

## CGCMS 24335

## Docket No. 1253

## 20 April 2007

Special Court-Martial convened by Commanding Officer, USCGC FIR (WLB 213). Tried at Astoria, Oregon, on 13 September 2005.

| | |
|---|---|
| Military Judge: | CDR Stephen P. McCleary, USCG |
| Trial Counsel: | LT Jowcol I. Vina, USCGR |
| Defense Counsel: | LT Lauren E. Haley, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Donna D. Leoce, USCG |

## BEFORE
## McCLELLAND, KANTOR, & TUCHER
### Appellate Military Judges

TUCHER, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of two specifications of larceny and one specification of wrongful appropriation, all in violation of Article 121, Uniform Code of Military Justice (UCMJ); and one specification of housebreaking, in violation of Article 130, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for five months, and reduction to E-1. The Convening Authority approved the adjudged sentence, which was unaffected by the pretrial agreement.

Before this Court, Appellant has assigned the following four errors:

I. The military judge failed to elicit facts sufficient to show Appellant had stolen property on divers occasions.

II.      Appellant's pleas are improvident because the military judge misadvised Appellant that due to an involuntary extension, his eligibility to receive pay would extend beyond his normal expiration of enlistment.

III.     Appellant's plea to wrongful appropriation was improvident because Appellant lacked the requisite intent.

IV.      Trial defense counsel erred by requesting a punitive discharge and the military judge erred in failing to inquire into Appellant's desire to stay in the Coast Guard after defense counsel made the request.

Appellant's second assignment is rejected. Our review of the record confirms that initially Appellant was correctly informed and acknowledged that his entitlement to pay would terminate upon the expiration of his normal enlistment. (R. at 108.) We find no evidence that Appellant's pleas were improperly influenced by any subsequent error in the explanation of his entitlement to pay under the pretrial agreement. Appellant has not met his burden of establishing that his expectation of receiving military pay during a period of involuntary extension beyond his normal expiration of enlistment was material to his decision to plead guilty. *See United States v. Lundy*, 63 M.J. 299 (C.A.A.F. 2006).

We address Appellant's first and third assignments below, affirm in part, and set aside the finding of guilty on the Additional Charge and the sentence. Because we are remanding the case, it is not necessary to address the questions presented in Appellant's fourth assignment.[1]

**Background**

Appellant's court-martial resulted from a series of disappearances of military property from his unit, the Coast Guard Cutter FIR. At trial, Appellant pleaded guilty to stealing a rigging knife from a chief petty officer's stateroom; stealing various items of military property, including knives, flashlights, Leatherman Super Tools, a night vision device, and a roll of plastic wrap, having a total value of over $4,000, on "divers occasions;" and wrongfully appropriating various items of military property, including manila rope; nylon parachute cord; nylon rope; buoy lantern lenses, bolts, and gaskets; and two 200 mm buoy lanterns, totaling over $2,400, on divers

---

[1] Although we do not reach this assignment, it is inexplicable to us that the military judge did not foreclose the issue by conducting a "BCD striker" inquiry after defense counsel argued for a bad-conduct discharge "in lieu of excessive confinement . . . ." (R. at 195.)

occasions.  Appellant also pleaded guilty to housebreaking in connection with the theft of the rigging knife.

### First Assignment

In his first assignment, Appellant contends that his guilty plea to Charge I, Specification 2, larceny of military property valued at $4,051.90, was partially improvident in that the record fails to show that the thefts occurred on "divers occasions" as alleged in the specification.  We agree.  The record of trial fails to establish that any item was taken at a different time than any other item such that Appellant can be convicted of larcenies on divers occasions.  Accordingly, we will approve the finding of guilty under Specification 2, excepting the words "on divers occasions."  We find Appellant not guilty of the excepted words.

### Third Assignment

Appellant was convicted of wrongful appropriation of various items of military property from his unit, Coast Guard Cutter FIR, having a total value of about $2,419.  During the providence inquiry, Appellant explained his purpose for taking the items as follows:

> The rope – all the line I was using to make rope mats for the decommissioning – I used the rope to make rope mats.  I'm a boatswain's mate and I do fancy work with knots.  I was doing a rope mat for several people on the ship; for the new CO coming in for his cabin.  I was doing all that on my own.  As I have done in the past, I take work home.  I do that kind of stuff at home just for extra – you know, there's no time to do it during the workday.
>
> The buoy lantern – those 200 mm lanterns don't come black like the one that was in poor condition.  I took an old lantern, cleaned it up and was going to make an actual table lamp for the captain's cabin.

(R. at 90-91.)

Appellant explained that he believed his conduct was criminal "because I did not have the appropriate permission to take that stuff home to do that work."  (R. at 91.)  Appellant, however, also insisted that the command was aware of his intentions, stating, "They knew – I brought the

ideas up to them that I wanted to do the mats and I wanted to do the lanterns. But I never got permission to actually remove them." (R. at 91-92.) Appellant explained that he intended to return the items to the unit, either as completed projects or in the form of unused rope, but that he never had the opportunity because "I just finished – I had just finished a couple days prior to this happening." (R. at 94.)

Appellant now argues that since he took the items with the intent of returning them as functional assets to the cutter FIR, the record fails to establish that he formed the criminal *mens rea* required for a wrongful taking under Article 121, UCMJ. The Government contends that the plea to wrongful appropriation was provident when viewed in the context of the entire record, including Appellant's admission that he took the items home without obtaining permission, and his subsequent qualifying statement that he was not sure that his shipmates actually knew of his intentions to return the items.

## Discussion

Prior to accepting a plea of guilty, Rule for Courts-Martial (R.C.M.) 910(e), Manual for Courts-Martial, United States (2005 ed.), requires the military judge to make "such an inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." *See United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996); *see also United States v. Care*, 18 USCMA 535, 541, 40 C.M.R. 247, 253 (1969); R.C.M 910(c). If an accused sets up matters inconsistent with his plea, *see United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996), or if his responses reasonably raise the possibility of a defense to the charges, *see United States v. Timmins*, 21 USCMA 475, 479, 45 C.M.R. 249, 253 (1972), the military judge is required to discuss and resolve the inconsistency with the accused and defense counsel. *See* RCM 910(e) and (h)(2). Where a defense is reasonably raised, the military judge should develop a factual basis for why the accused and his counsel do not believe that the defense exists. *United States v. Penister*, 25 M.J. 148, 153 (C.M.A. 1987) (Cox, J., concurring). If it appears that an accused has entered his pleas improvidently or through a lack of understanding of their meaning and effect, the military judge must enter pleas of not guilty in the record, and thereafter the court proceeds as though the accused had pleaded not guilty. Article 45(a), UCMJ; *see Garcia*, 44 M.J. at 498.

A judge's decision to accept a guilty plea is reviewed for abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). When evaluating a guilty plea, an appellate court will not disturb the plea unless the record fails to objectively support the guilty plea, or where there is evidence in "substantial conflict" with the plea of guilty. *United States v. Bullman*, 56 M.J. 377, 381 (C.A.A.F. 2002); *United States v. James*, 55 M.J. 297, 300 (C.A.A.F. 2001). When reviewing the providence of a guilty plea, the entire record should be considered. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004); *United States v. Jordan*, 57 M.J. 236, 238-39 (C.A.A.F. 2002). Rather than focusing on a technical listing of the elements of an offense, an appellate court must determine whether an appellant was aware of the elements, either explicitly or inferentially. *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992); *United States v. Burris*, 59 M.J. 700, 702 (C.G.Ct.Crim.App. 2004). The burden is on the appellant to demonstrate a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Under Article 121, UCMJ, the offense of wrongful appropriation occurs when a person "wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person, any money, personal property, or article of value of any kind – . . . (2) with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner . . . ." In the context of wrongful appropriation, a "wrongful taking" means a trespass on or interference with the possessory right of the owner or another with a superior interest in the property. *See United States v. Jones*, 35 M.J. 143, 146 (C.M.A. 1992). Where the property involved is Government or military property, "a wrongful taking of property is one that is not authorized by the Government or a unit thereof which has possession or lawful custody of that property." *United States v. McGowan*, 41 M.J 406, 411 (C.A.A.F. 1995).

"Not every wrongful taking constitutes a violation of Article 121." *United States v. Hayes*, 8 USCMA 627, 629, 25 C.M.R. 131, 133 (1958). A criminal taking must be accompanied by a specific intent to deprive or defraud. *See United States v. Harville*, 14 M.J. 270, 271 (C.M.A. 1982). Based on our careful review, we are not convinced that the record establishes that Appellant had the *mens rea* necessary to commit wrongful appropriation.

Although Appellant acknowledged that he believed he was guilty of wrongful appropriation because he lacked *express* permission to take the items home, he also explained that he acted for the sole purpose of completing government projects during his off-duty time, saying, "As I have done in the past, I take work home," because "there's no time to do [the work] during the workday." (R. at 90-91.) Appellant maintained that he had previously discussed his plans to complete the projects with various members of the chain of command, and described the lantern as having been old and in poor condition. The clear thrust of Appellant's explanation was that he took items that were of no apparent use to anyone for the purpose of returning them as functional assets for the benefit of the unit, and that he only believed he was guilty of wrongful appropriation because he failed to obtain express permission before doing so.[2]

An accused who honestly believes that the property owner consented, or would have consented, to a taking cannot be convicted of a violation of Article 121, UCMJ. *Harville*, 14 M.J. at 271; *Hayes*, 8 USCMA at 629-30, 25 C.M.R. at 133-34; *United States v. Caid*, 13 USCMA 348, 351, 32 C.M.R. 348, 351 (1962). More recently, cases have addressed the accused's honest but incorrect belief as to his authority to take the property in issue through the framework of the affirmative defense of mistake. *See United States v. Binegar*, 55 M.J. 1, 5 (C.A.A.F. 2001); *see also United States v. Turner*, 27 M.J. 217, 220 (C.M.A. 1988); *United States v. Gillenwater*, 43 M.J. 10, 13 (C.A.A.F. 1995). In this case, Appellant's explanation that he believed he was entitled to remove the items from the ship based on his restricted work schedule and his previous history of working on Coast Guard projects at home was sufficient to raise the mistake of fact defense. *See Gillenwater*, 43 M.J. at 13. Faced with Appellant's responses, the military judge should have explained to Appellant that his statements were inconsistent with the intent required for wrongful appropriation, and advised Appellant of the defense of mistake of fact under R.C.M. 916(j). Here, the military judge did not explain why Appellant's explanation was in conflict with his plea, he was not informed of the elements of the

---

[2] *United States v. McGowan*, 41 M.J. 406 (CAAF 1995), which Appellant cites as dispositive, involved an injured Marine who "midnight-requisitioned" an inoperative vehicle in a war zone in Iraq, converted it into a functional ambulance with the assistance of U.S. Navy Seabees, and used it to transport wounded Marines to a field hospital. The accused in that case labored under no mistaken belief as to his authority to appropriate the vehicle. Nevertheless, a split majority of our superior court set aside the accused's conviction, opining that his simple intent to interfere with the Government's superior custodial right in the vehicle was legally insufficient to establish the specific intent element of wrongful appropriation. *Id.* at 413-14. The plurality opinion expressly confined the holding of the case to its unique facts. *Id*. at 414. We decline to draw similarities between Appellant's case and *McGowan*.

defense of mistake, and he was not asked to explain why his intentions and actions rose to the level of criminal conduct.[3]

Where a military judge fails to adequately explain the elements of an offense or any defense raised during the providence inquiry, a guilty plea may still be upheld where the record as a whole establishes that the accused knew the elements – either explicitly or inferentially – admitted them freely, and pleaded guilty because he was guilty. *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992). In this regard, we duly note that Appellant retreated somewhat from his initial claim that the command was aware of his ongoing projects, and that he acknowledged that he took the items without express permission and that his conduct was wrongful. We also note, however, that with the exception of the narrative exchange that produced the statements in conflict with Appellant's guilty plea, the entire providence inquiry on the offense of wrongful appropriation was conducted through the use of leading questions, with almost all exchanges merely eliciting Appellant's agreement with the stipulation of fact, or mechanical "yes" and "no" responses to legal conclusions posed by the military judge. Because Appellant did not speak freely, we have only a limited factual record with which to evaluate the inconsistent statements in the context of the overall plea. *United States v. Holt*, 27 M.J. 57, 58 (C.M.A. 1988) ("[I]t is especially important that the accused speak freely so that a factual basis will be clearly established in the record."). Our superior court has described this type of questioning as "fatally deficient." *United States v. Negron*, 60 M.J. 136, 143 (C.A.A.F. 2004); *see also United States v. Bullman*, 56 M.J. 377, 381-82 (C.A.A.F. 2002).

In addition, the military judge's inquiry in this case did not go far enough to orient the accused to the law relative to his specific circumstances so that he could resolve the inconsistencies in his statements. *See United States v. Rokey*, 62 M.J. 516, 518 (A.Ct.Crim.App. 2005) (proper resolution of a matter in conflict with a guilty plea requires that the military judge identify the inconsistency, explain its legal significance, and offer the accused an opportunity to retract, disclaim, or explain the inconsistent matter). For example, although Appellant agreed

---

[3] The Government appears to argue that Appellant's explanation of his purpose in taking the items should not be believed, and refers to the unit Executive Officer's stipulated testimony in aggravation to show that Appellant was aware of the command's efforts to recover the missing items but nonetheless failed to return them. The Government's argument misses the mark. When deciding whether a guilty plea is rendered improvident by a statement that is in substantial conflict with the plea, our "sole question is whether the statement was inconsistent, not whether it was credible or plausible." *United States v. Bullman*, 56 M.J. 377, 381 (C.A.A.F. 2002).

with the military judge that his actions were wrongful and without justification, he never disavowed his initial explanation that his purpose for taking the items home was to complete projects for the use and benefit of the unit, and he never provided a factual basis for concluding that the defense of mistake should not apply to his case. *See* RCM 910(e) and (h)(2). These inconsistencies and the almost complete absence of narrative responses in the record raise a substantial question in our mind concerning the providence of Appellant's guilty plea. *See Negron*, 60 M.J. at 143. We find that Appellant's guilty plea to wrongful appropriation was improvident, and we set aside the finding of guilty.

## Decision

In light of the foregoing, after review of the record pursuant to Article 66, UCMJ, the finding of guilty to Charge I, Specification 2 is affirmed, excepting the words "on divers occasions." The finding of guilty to the Additional Charge and its specification, wrongful appropriation, and the sentence are set aside. The remaining findings, as modified, are determined to be correct in law and fact, and are affirmed. Based on our action on the findings, the record is returned to the Judge Advocate General for referral to an appropriate convening authority. The convening authority may order a rehearing on the Additional Charge and its specification and the sentence. If the convening authority determines that a rehearing on the Additional Charge and its specification is impracticable, the convening authority may dismiss that charge and specification and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence is likewise impracticable, the convening authority may approve a sentence of no punishment. *See* R.C.M. 1203(c)(2).

Chief Judge McCLELLAND and Judge KANTOR concur.



For the Court,


Jane R. Lim
Clerk of the Court